### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **SATURN WIRELESS CONSULTING, LLC,** | Civ. No. 17-01637 (KM) (JBC) |
| **Plaintiff,** | **OPINION** |
| **v.** | |
| **FRANK AVERSA,** | |
| **Defendant.** | |

**KEVIN MCNULTY, U.S.D.J.:**

Saturn Wireless Consulting, LLC, previously employed Frank Aversa. Saturn sued Mr. Aversa, alleging that he violated a non-compete agreement. I granted a preliminary injunction prohibiting certain actions by Mr. Aversa. Then, Saturn learned of actions by Mr. Aversa which, it contended, violated the injunction. Saturn moved for an order to show cause why Mr. Aversa should not be held in contempt. (DE 40.)[1] I held an evidentiary hearing. Following supplementary briefing and a recent conference on the matter, I find Mr. Aversa in contempt.

---

[1]     Certain citations to the record are abbreviated as follows:

DE = docket entry

PI Order = Order Granting Preliminary Injunction (DE 33)

Saturn Br. = Saturn's Brief in Support of its Application for an Order to Show Cause (DE 40-1)

Saturn Supp. Br. = Saturn's Supplemental Brief in Support of its Application for an Order to Show Cause (DE 130)

Aversa Supp. Opp. = Aversa's Supplemental Brief in Opposition to Contempt Application (DE 133)

Aversa Decl. = Declaration of Frank Aversa (DE 53-1)

Sood Decl. = Declaration of Manika Sood (DE 56)

## I.   BACKGROUND

### A. Preliminary Injunction Proceedings

Saturn provides wireless communications support and training, particularly to businesses that use AT&T for their wireless network. *Saturn Wireless Consulting, LLC v. Aversa*, Civ. No. 17-1637, 2017 WL 1538157, at *1– 2 (D.N.J. Apr. 26, 2017). Saturn gets referrals from AT&T but also competes with other "solutions providers" for those referrals. *Id.* at *2. Saturn builds and maintains its relationship with AT&T by fostering individual relationships between Saturn's Regional Account Managers ("RAMs") and AT&T sales representatives. *Id.* Mr. Aversa was a RAM, and as a condition of his employment with Saturn signed a provision prohibiting him from contacting or doing business with Saturn customers for one year following his departure from Saturn. *Id.* at *3–5.

Mr. Aversa eventually left Saturn and created a company that competed to serve as an AT&T solutions provider, Connected Communications Group ("CCG"). *Id.* at *5. Saturn learned that Mr. Aversa had been contacting Saturn customers, so Saturn sued Mr. Aversa, asserting claims for (1) breach of contract; (2) misappropriation and conversion of trade secrets and confidential information; (3) actual and threatened misappropriation under the New Jersey Trade Secrets Act, N.J. Stat. Ann. § 56:15-1 *et seq.*; (4) breach of fiduciary duty and duty of loyalty; (5) unjust enrichment; and (6) unfair competition. (DE 1.)

Saturn moved for a temporary restraining order ("TRO") and a preliminary injunction. (DE 3.) I denied a TRO but ordered expedited discovery and set the matter down for a preliminary injunction hearing. (DE 5.) Following a hearing (DE 19, 22), I granted a preliminary injunction in April 2017, finding that Mr. Aversa violated his agreement, but I limited that agreement's application to only certain AT&T sales representatives and end-users, as specified on a list provided by Saturn. (DE 23, 24.) Accordingly, the operative injunctive order enjoined Mr. Aversa

> for a period of one year from the date of his resignation, that is,
> through November 15, 2017, from violating the non-solicitation

2

provision . . . , such relief being limited to Aversa ceasing and
desisting from contacting, soliciting or otherwise doing business
with the AT&T Sales Representatives and end-users identified in
Exhibits P-3 and P-3A at the evidentiary hearing for purposes
related to the wireless business.

(PI Order.)[2]

### B. Contempt Proceedings

A few months later, Saturn moved for an order requiring Mr. Aversa to
show cause why he should not be held in civil contempt. (DE 40.) According to
Saturn, AT&T gives its solutions providers sales reports that list monthly sales,
including the AT&T sales representative involved in the deal, the end-user, and
the solutions provider through which the sale was made. (Sood Decl. ¶ 3.) Sales
reports reviewed by Saturn credited CCG with hundreds of activations
involving individuals or entities on the prohibited list since the injunctive order.
(*Id.* ¶ 4.)

I held an evidentiary hearing, where Mr. Aversa claimed that he did not
disobey the Court's order because his wife Shawna (whom he hired as an
employee) and an independent contractor (Jack Hostutler) conducted all
business with those on the prohibited list. The hearing was adjourned so that
Saturn could depose Mrs. Aversa and Hostutler. Following the depositions, the
parties filed supplemental briefs.

Some time passed, and discovery continued. The COVID pandemic
intervened. Recently, Saturn renewed its request for action on its contempt
motion. (DE 172.) Given the passage of time, I allowed the parties to submit
supplemental affidavits attesting to any changed circumstances. (DE 173.) Mr.
Aversa did so. (DE 175.)

On August 11, 2021, I held a video status conference to ascertain
whether a decision on the contempt motion was needed, and where the case
stood. (DE 182.) It appeared to both counsel that further progress in the case

---

[2]     I entered a preliminary injunction order a week prior but permitted Saturn,
following consultation with Mr. Aversa, to submit its own preliminary injunction form
further specifying relief for signature. (DE 24.)

depended on a decision on the contempt motion. Neither side, however, sought an additional evidentiary hearing; counsel consented to submit the matter on the record currently before the Court. Apparently, defendant, in whose favor the preliminary injunction had been entered, had neglected to post the required bond; it did so the day after the conference. (DE 183)

## II.   DISCUSSION

I find Mr. Aversa in contempt and then discuss appropriate sanctions.

### A. Liability

For the Court to find Mr. Aversa in contempt, Saturn must show "(1) that a valid order of the court existed; (2) that [Mr. Aversa] had knowledge of the order; and (3) that [he] disobeyed the order." *FTC v. Lane-Labs-USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010) (citation omitted). Saturn must make this showing by clear and convincing evidence, *id.*, that is, "the truth of its factual contentions are highly probable." *Araujo v. N.J. Transit Rail Operations, Inc.*, 708 F.3d 152, 159 (3d Cir. 2013) (citation omitted); *see also* Third Circuit Court of Appeals Model Civil Jury Instruction 1.11 (Aug. 2020) ("Clear and convincing evidence is evidence that produces in [the] mind a firm belief or conviction that the allegations sought to be proved by the evidence are true."); *United States v. Bayer Corp.*, Civ. No. 07-1, 2015 WL 5822595, at *11 (D.N.J. Sept. 24, 2015) (applying articulation in contempt proceeding). This evidentiary standard "is the intermediate burden of proof, in between a preponderance of the evidence and proof beyond a reasonable doubt." *Araujo*, 708 F.3d at 159 (quotation marks and citation omitted).

The first two elements are not in dispute. As to the third element, Saturn has produced sales reports from AT&T showing extensive business between Mr. Aversa's company, CCG, and individuals and entities on the prohibited list. The question, then, is whether such business suffices to show that Mr. Aversa himself violated the order.

As a general matter, Mr. Aversa can liable for contempt if he "abet[ted]," "instigated, endorsed, or ratified" another's conduct which violated

the order. *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 674 (3d Cir. 1999). But there must be "evidence of record that would permit a reasonable fact-finder to so conclude." *Id.* I find that Saturn has made that showing and rely on the following factual findings.

First, even without direct evidence that Mr. Aversa ordered or controlled Mrs. Aversa's or Hostutler's conduct, the Court may easily infer such involvement. Mr. Aversa was the sole owner of CCG, which operated out of his house. (Sood Decl. ¶¶ 11–12.) Prior to the injunction, Mr. Aversa was also the sole employee of CCG. It was immediately after the Court entered its preliminary injunction that he hired Mrs. Aversa, and he hire Hostutler four months later. (*Id.*; Aversa Decl. ¶ 3.)[3] There is no evidence that Mr. Aversa ceased to control CCG, or in any way stepped back from management of CCG, during the relevant time period.

From these facts alone, one can draw a starting-line inference of Mr. Aversa's involvement with Mrs. Aversa and Hostutler. It is simply implausible that the founder and owner of a three-employee LLC run out of his house had no knowledge or involvement with the business conducted by his employees. Indeed, the Third Circuit held that facts similar to these supported a finding of contempt in *Marshak v. Treadwell*, 595 F.3d 478 (3d Cir. 2009). In that case, the district court enjoined a music promoter and his company from using a trademark. The promoter's wife then formed a company that operated out of their home, employed the promoter, and "picked up where [the old company]

---

[3]      Saturn argues that the act of hiring Hostutler itself violated the injunction because Hostutler was on the prohibited list, as he formerly was an AT&T representative. (Saturn Supp. Br. at 5.) Mr. Aversa responds that Hostutler had not been an AT&T representative for two years before Mr. Aversa hired him. (Aversa Supp. Opp. at 9.) My order prohibited Mr. Aversa from "doing business with the AT&T Sales Representatives" on the prohibited list. (PI Order.) There is a reasonable argument that the order is ambiguous as to whether Mr. Aversa could not do business with individuals only while they were currently AT&T sales representatives. Ambiguities are resolved in the defendant's favor, and courts should hesitate to find defendants in contempt when the wrongfulness of their conduct is less than clear. *Lane-Labs*, 624 F.3d at 582. Thus, I grant that simply *hiring* Hostutler may not have been a violation.

left off." 595 F.3d at 483, 489. The Third Circuit upheld a finding that this continuation of business, with the promoter still in the mix, showed that the promoter had violated the injunction. *Id.* at 490. The facts here are similar: Mr. Aversa's wife picked up where Mr. Aversa left off, while Mr. Aversa stayed employed with CCG and CCG operated out of his home. As in *Marshak*, this scheme belies any assertion that Mr. Aversa was firewalled off from CCG's business with prohibited entities.

Second, building on this natural inference is some more direct evidence of Mr. Aversa's involvement. All three—Mr. and Mrs. Aversa, and Hostutler— testified that Mr. Aversa provided customer contacts to Mrs. Aversa and Hostutler to get them started. Indeed, there is no other plausible explanation for how Mrs. Aversa and Hostutler could begin making sales. As a result, Mr. Aversa enabled and prompted his employees to do business with prohibited entities that he could not do himself. Saturn has also produced numerous instances of Mr. Aversa placing orders for entities on the prohibited list or making contact with them. (Saturn Supp. Br. at 5–7.) Finally, Mr. Aversa testified that he performed administrative tasks, like processing orders, for Mrs. Aversa and Hostutler. Although that may fall short of "doing business" with prohibited entities, he at the very least facilitated others' business, contributing to the impression that Mrs. Aversa and Hostutler acted as puppets, doing indirectly what Mr. Aversa could not do directly, for the benefit of Mr. Aversa.

Third, the evidence undermines any notion that Mrs. Aversa and Hostutler simply took over the business with the prohibited entities; in short, there is every indication that this was a sham arrangement. As to Mrs. Aversa, her deposition revealed that when she was "hired" by her husband's (then) one-man company, (1) she had no prior experience in this sector, (2) the first few months of her alleged employment with CCG were during her third trimester of

6

pregnancy,[4] (3) she never met or spoke on the phone personally with customers, (4) she lacked basic knowledge of concepts of the solutions provider business, and (5) she was only vaguely familiar with AT&T sales representatives. It is implausible, bordering on impossibly, that she truly generated such substantial business and conducted it on her own in the months following the injunction order. And for the four months after the order was entered, Mrs. Aversa was allegedly the *only* CCG employee (besides Mr. Aversa himself).

As to Hostutler, his deposition similarly revealed that (1) he had no experience in this area (although he did have experience in wireline, as opposed to wireless), (2) he received minimal pay, and (3) Mr. Aversa processed many of his orders. Again, it is implausible that the volume of business can be attributed to him. Again, there is every indication that he functioned as a front for Mr. Aversa.

In sum, these facts taken together give rise to a firm belief that at least a substantial portion of CCG's business conducted with prohibited entities, must be attributed to Mr. Aversa. Indeed, the most plausible inference is that Mr. Aversa conducted the majority or all this business. But at the very least, it strains reason to find that *none* of the business was conducted by him. Because any business would violate the order, the facts easily support a finding of contempt.

### B. Sanction

Once a district court finds a party in contempt, the court has discretion to impose an appropriate sanction. *Robin Woods Inc. v. Woods*, 28 F.3d 396, 399 (3d Cir. 1994). "Sanctions for civil contempt serve two purposes: to coerce the defendant into compliance with the court's order and to compensate for losses sustained by the disobedience." *Id.* at 400 (quotation marks and citation

---

[4]    By letter dated August 10, 2017, counsel sought and obtained an adjournment of the contempt hearing, stating that Mr. Aversa could not travel for 3–4 weeks because Mrs. Aversa had given birth the day before. I accept this as a representation of counsel without further evidence. (DE 42)

omitted). Saturn proposes several sanctions: (1) extending the period of the injunction by six months; (2) directing Mr. Aversa to pay attorney's fees and costs for the injunction and contempt proceedings; (3) directing Mr. Aversa to produce records of sales and communications with the entities on the prohibited list so that Saturn may calculate damages; (4) ordering Mr. Aversa to disgorge payments received in violation of the injunction; (5) freezing Mr. Aversa's assets or ordering him to post a bond as security; (6) notifying Mr. Aversa that further violations will carry criminal penalties. (Saturn Br. at 7–9.) I consider those requests in turn.

First, I will not extend the injunction. As support for that request, Saturn relies on *Bunzl Distribution Northeast, LLC v. Boren*, where the court enjoined a defendant from violating a non-compete agreement, and when the defendant did so, the court extended the injunction period by sixth months. Civ. No. 07-3706, 2008 WL 43995, at *1, 6 (D.N.J. Jan. 2, 2008). The court reasoned that the purpose of the non-compete was to provide a period when the plaintiff could solidify its business relationships to prevent loss when the non-compete expired. *Id.* at *6. Thus, the defendant's violations robbed the plaintiff of that period, so the plaintiff should receive a violation-free period. *Id.*

A critical difference from this case is that the *Bunzl* court extended the injunction *prior to* its expiration. *See id.* Here, Saturn's request is—effectively by now—one to retroactively extend the injunction period. To be sure, Saturn's original motion was made with some months still left in the injunction period, similar to *Bunzl*. Still, I must take the facts as they are presently. *Cf. Francisco-Lopez v. Att'y Gen. U.S.*, 970 F.3d 431, 436 (3d Cir. 2020) ("Retroactivity is not favored in the law."). Damages, plus sanctions for prior disobedience of the order, are sufficient to act as a disincentive.

Second, a district court can require the party in contempt to pay attorney's fees and costs incurred by the other party in investigating the violations and pursuing contempt proceedings. *Robin Woods*, 28 F.3d at 401. But the award must be reasonable and have some basis in the record.

*Lichtenstein v. Lichtenstein*, 425 F.2d 1111, 1113–14 (3d Cir. 1970). Thus, Saturn may apply for an award of attorney's fees and costs associated with the contempt proceeding,[5] accompanied by evidentiary support. Mr. Aversa may respond with a brief outlining any objections to the reasonableness of Saturn's proposed award. *See Bunzl*, 2008 WL 43995, at *6 (inviting same). The parties are encouraged to confer and propose a schedule for this submission that is streamlined with any remaining proceedings in this case.

Third and fourth, lost profits can be an appropriate sanction in contempt proceedings. *Marshak*, 595 F.3d at 495; *Lawn Doctor, Inc. v. Rizzo*, 646 F. App'x 195, 200 (3d Cir. 2016) (per curiam). Indeed, in *Marshak*, the Third Circuit held that a district court abused its discretion when it refused to order an accounting of profits, given the efforts to avoid the injunction (which resemble those here). *Marshak*, 595 F.3d at 496. Still, there must be evidentiary support for the amount of profits lost, *Lawn Doctor*, 646 F. App'x at 200, and contempt damages "must not exceed the actual damages caused the offended party by a violation of the court's order," *Quinter v. Volkswagen of Am.*, 676 F.2d 969, 975 (3d Cir. 1982). Accordingly, I will put Mr. Aversa on notice that I am considering disgorgement, but I require more facts to calculate what disgorgement would be. I will therefore order Mr. Aversa to produce documents relevant to CCG's business with prohibited individuals and entities during the injunction period. *See Bunzl*, 2008 WL 43995, at *6 (ordering production of such documents). As to when the parties can make submissions to this Court regarding disgorgement, the parties represented that any contempt finding will inform how they proceed towards trial or settlement. When conferring and

---

[5]     Although Saturn also requests attorney's fees and costs associated with the original injunction proceeding, it cites no binding precedent, and I could locate none, endorsing such an award. Rather, the Third Circuit has explained that the purpose of awarding attorney's fees in contempt proceedings is to compensate for having to investigate and pursue such proceedings. *Robin Woods*, 28 F.3d at 401. That purpose is not served by also requiring Mr. Aversa to pay for the underlying injunction proceeding. Thus, an attorney's fee award here will be limited to those expenses incurred as a result of the contempt proceeding.

proposing a schedule for this case going forward, the parties should also propose a schedule for deciding disgorgement and whether that proceeding can be subsumed with summary judgment or trial. *See AMG Nat'l Tr. Bank v. Ries*, 319 F. App'x 90, 92–93 (3d Cir. 2008) (observing that contempt damages may be better determined along with a final determination on the merits).

Fifth, I will not take the drastic remedy of freezing Mr. Aversa's assets or requiring him to post a bond. An asset freeze is effectively a form of a preliminary injunction where a court finds that a plaintiff is likely to succeed on its claims for disgorgement, but the defendant is likely to dispense the ill-gotten profits, so the court freezes the defendant's assets to preserve them for final judgment. *Juul Labs Inc. v. 4X Pods*, 509 F. Supp. 3d 52, 71 (D.N.J. 2020). Saturn queries whether Mr. Aversa will be able to satisfy a disgorgement judgment, so it seeks an asset freeze or, alternatively, an order that a bond be posted. Yet, Saturn has provided no precedent endorsing an asset freeze or bond requirement pursuant to a contempt finding. Moreover, an asset freeze is a drastic remedy and requires a clear, factually supported showing. *Id.* Saturn has not attempted to make such a showing. I thus do not even have a solid basis to conclude that a future disgorgement judgment is at risk. Accordingly, I will not freeze Mr. Aversa's assets or require him to post a bond.

What I will do, however, is refund the deposit that defendant posted to secure the bond. The injunction expired some three years ago, with no appeal having been taken. In equity, and in light of Mr. Aversa's virtually complete disregard to the preliminary injunction, there is no further purpose to requiring the injured party, Saturn, to maintain the bond.

Finally, Saturn is correct that more severe sanctions are available for any continued contempt. *See Roe v. Operation Rescue*, 919 F.2d 857, 868 (3d Cir. 1990). It will suffice for now to remind Mr. Aversa that these sanctions exist,

and his personal belief that he has done nothing wrong[6] will not be a defense to them.

## Conclusion

For the reasons set forth above, I find Mr. Aversa in contempt of the preliminary injunctive order. For the time being, he is ordered to produce financial documents sufficient to permit an estimate lost profits resulting from his violations, as well as documents sufficient to establish the business's annual net profits for the period November 15, 2016, to the present. Saturn is authorized to make a submission establishing the amount of attorney's fees and costs associated with this contempt proceeding.

A separate order will issue.

Dated: October 12, 2021

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**

---

[6]     Adding to the Court's confidence in finding that Mr. Aversa intended to, and did, violate the order is his continued defiance. He did not pursue the permissible route of appealing from the preliminary injunction, but simply sought to circumvent it. Even now, in a supplemental affidavit filed in February 2021, he reveals the basis for his actions: "My conviction that I never violated the Court's order back in 2017 is undiminished today." (DE 175 at 4 ¶ 7) While he suggests that his defiance is ancient history that the Court should disregard, I disagree. I am not continuing or reviving the preliminary injunction, but merely attaching consequences to his past disobedience of it.